# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### May 8, 2001 Session

## STATE OF TENNESSEE v. FRANK JOHNSON

### Direct Appeal from the Criminal Court for Shelby County
### No. 99-03574-75    Chris Craft, Judge

### No. W2000-00386-CCA-R3-CD - Filed June 26, 2001

The defendant was indicted by a Shelby County Grand Jury for driving while an habitual motor vehicle offender, felony evading arrest, and driving under the influence of an intoxicant, fourth offense (felony DUI), all charges arising from a single incident. The defendant pled guilty to driving while an habitual motor vehicle offender, a Class E felony, with punishment reserved until after trial of the other offenses. Following a jury trial, the defendant was found guilty of felony evading arrest, a Class E felony, not guilty of felony DUI, and sentenced to consecutive, six-year terms as a career offender for driving while an habitual motor vehicle offender and for felony evading arrest, resulting in an effective sentence of twelve years. The trial court also assessed fines of $2000 on each conviction. In this appeal as of right, the defendant argues that the evidence was insufficient as to the felony evading arrest conviction, that the jury should have been instructed as to lesser-included offenses, and that the sentences should not be served consecutively. Based upon our review, we affirm the judgments of the trial court.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed

ALAN E. GLENN, J., delivered the opinion of the court, in which DAVID H. WELLES, J., and L. TERRY LAFFERTY, SR.J., joined.

Jeffrey Jones, Memphis, Tennessee, for the appellant, Frank Johnson.

Paul G. Summers, Attorney General and Reporter; Kim R. Helper, Assistant Attorney General; William L. Gibbons, District Attorney General; James Lammey, Assistant District Attorney General; and Steven Hall, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

The defendant, Frank Johnson, was indicted by a Shelby County Grand Jury for driving while an habitual motor vehicle offender; felony evading arrest; and driving under the influence of an intoxicant, fourth offense (felony DUI). All charges arose out of an incident occurring on October 3, 1998. The defendant pled guilty to driving while an habitual motor vehicle offender, a Class E

felony, with punishment reserved until after trial of the other charged offenses. Following a jury trial, the defendant was found guilty of felony evading arrest, a Class E felony, and not guilty of felony DUI. The trial court ordered the defendant to serve consecutive, six-year terms as a career offender for driving while an habitual motor vehicle offender and for felony evading arrest, resulting in an effective sentence of twelve years in the Department of Correction. The trial court also fined the defendant $2000 on each conviction.

In this appeal as of right, the defendant challenges the jury's verdict finding him guilty of felony evading arrest, as well as his punishment for that offense, by raising the following issues for our review:

I.   Whether the evidence was sufficient to support the felony evading arrest conviction;

II.  Whether the trial court erred in failing to properly instruct the jury as to the following:

1.   The elements of the charged offense, Tennessee Code Annotated Section 39-16-603(b)(1); and

2.   Lesser-included offenses.

III. Whether the trial court erred in ordering that his sentence for felony evading arrest be served consecutively to his sentence for driving while an habitual motor vehicle offender.

We conclude that the evidence is sufficient to support the conviction; that the trial court did not commit reversible error in instructing the jury; and that the sentence is appropriate. The judgment of the trial court is affirmed.

## **FACTS**

Officer Monica Carson of the Memphis Police Department testified on direct examination as to how the defendant first caught her attention:

Q.   If you would, tell us what you noticed that was unusual, please.

A.   I saw a vehicle being driven with a male black hanging out of the window. The window was completely down. I couldn't tell if it was down or busted out. And in the rain, as pouring down as it was, that was very odd for someone to have their head stuck out of the window driving.

Q. You said it was difficult to see, but you were able to see this; is that correct?

A. Yes. The rain was pouring down to where you had to have the windshield wipers up as fast as they would go, and slow your driving down a bit for safety sake.

Q. Okay. Now, when you see this individual - - first of all, let me back up. When you see this individual leaning out of the driver's side window in the rain, what did that cause you to do? What was your reaction?

A. My reaction was one of suspicion due to the fact of the area of where we were, a high auto theft area. It's just - - it's totally unusual for someone to have their head stuck out of the window during the rain.

Nine times out of ten when a vehicle is stolen the window is busted out on the driver's side. So, I wanted to check it out.

Q. And how did you go about checking it out?

A. I ran the tag that was on the vehicle, and the tag came back to be on another vehicle. It did not come back to the vehicle that this tag was on.

At this point, Officer Carson activated the emergency blue lights on her marked squad car. According to her testimony, she was following directly behind the defendant, at a distance of approximately one car length. The defendant continued south on Weaver, approximately 100 yards, to a stop sign at Shelby Drive. The defendant stopped at the sign and then turned right onto Shelby Drive, driving west. Officer Carson testified further:

The vehicle proceeded westbound on Shelby Drive. It made a right-hand turn. I turned on my spot light [sic] to catch his attention. The driver continued going. At one point he turned and yelled something. What I don't know. I had my windows up. He just turned his head, and shook his head and yelled something. He turned back around and just kept driving.

Officer Carson described the spotlight as a "high-powered" spotlight that could be maneuvered to shine on a specific area. Carson testified that she "placed it right on the driver, exactly where his body was. There was no doubt that he could see me." Other than one car that passed through the

intersection of Weaver and Shelby Drive headed in the opposite direction on Shelby Drive, there was no other traffic on the road.

The defendant turned south off of Shelby Drive at North Street. Officer Carson testified that, at this point, she had been following within approximately one car's length, directly behind the defendant, with her lights activated, for approximately one and one-half minutes. She described North Street as a street in "a residential area, but it's woody with narrow roads winding. The view -- I'm sorry. The lighting is very bad whether it's raining or not because of the woody area." Officer Carson testified to using the following signals to get the defendant to stop his vehicle:

> A. I had my emergency lights on. I had the siren on at one point. I turned it on once I got around the corner, so that when I was talking on the radio I could be heard. I also had gotten on the PA system, which I don't know if he heard me or not with the rain and whatnot, how it came out.
>
> Q. And the siren - - at what point did you turn the siren on; do you recall?
>
> A. A couple of points when we were on Shelby Drive, and then when we turned onto North at one point.
>
> Q. Okay. And where were you in relation to Mr. Johnson's vehicle when you turned that siren on?
>
> A. Still one car length away, behind him.
>
> Q. Okay. Did the vehicle stop after having received the additional siren as a means of communicating what you wanted it to do?
>
> A. No, sir.

On cross-examination, Officer Carson testified that the defendant was driving within the speed limit but that she "considered the vehicle to be a fleeing vehicle when he refused to stop the vehicle when the emergency lights came on."

The defendant continued driving his car on North Street to a T-intersection with Lakeridge Drive. He failed to stop at a stop sign at the T-intersection but continued straight into the U-shaped driveway at his home where he stopped. According to Officer Carson, some four minutes had elapsed from the time she made initial contact with the defendant's vehicle until the time he brought it to a final stop in his driveway. She estimated the total distance traveled as "about a mile or mile and a half."

-4-

Officer Carson pulled her squad car in directly behind the defendant's car and got out. The defendant also got out of his car. She testified as to what then occurred:

> Mr. Johnson was very belligerent, physically aggressive, verbally aggressive, screaming and yelling at me that he was not coming back there to me. That he only had a few beers to drink, and I couldn't arrest him on private property. That I could not arrest him. He repeatedly stated that.

> I said, Mr. Johnson - - I said, sir, just come on back to me. I said, just come on back up here. I'm not coming back there. After about the third or fourth time I told him to come back to me, he put his fists up and said, if you're going to arrest me, you are going to have to fight me to do it.

> I got on the radio and told them that he wanted to fight. The other cars were responding at that time. Mr. Johnson turned - - he had a ball cap on. He turned his cap backwards and put his fists up in a boxer stance. Started walking towards me and I told him to stop. He would not stop. I had to tell him to stop a few more times. He is still yelling and cussing, I'm going to make him hurt me. All this other kind of stuff. I told him after about the fourth time to stop. I put my hand on my pistol, unsnapped the pistol and lifted it up. I didn't pull it out. I told him, I said, I will shoot you if you do not stop.

> Because the lady in the car had jumped out, which is when I realized it was a female in the front seat. The other person in the back was moving around. I didn't know what was going on. I didn't know if anyone else was in the house.

> It was in a dark area. The other cars were not familiar with the area and kept asking me where I was. At that point, we saw - - I know I saw blue lights from behind me, around off the trees and whatnot. So, I knew a car was within seconds. That's when he stopped. He looked behind me, and I guess he saw the car. That's when he stopped. That's when the other car got there.

> He still refused to come to us after the other officers got there. The other officers told him to come to the car. They told him to relax. He refused. He was on private property. We cannot arrest him for drinking and driving. He had to physically get him and put him on the car. He didn't swing at us, but he physically resisted by

-5-

stiffening up his body by refusing to let us put his arms behind his back. Then he kept trying to pull his arms back so we couldn't get the handcuffs on. Then we tried to put him chest down on the car. He kept pulling hisself [sic] up off the car. It took three of us to get the handcuffs on.

Officer Kedzie White testified that when he arrived on the scene, Officer Carson and the defendant were involved in a verbal confrontation. Officer White also testified that the defendant "kept making statements to the effect that he was in his yard and that we couldn't arrest him on private property." The defendant was eventually arrested and transported to the Criminal Justice Center. Both Officer White and Officer Carson testified that the defendant appeared to be drunk at the time.[1]

Mary Moore, the defendant's sister, testified that on the evening prior to his arrest, they had been at a family gathering. She denied that the defendant, or anyone else at the gathering, was drunk. She said that the windshield wipers had stopped working as they were driving back from the gathering and, for this reason, the defendant was driving with his head outside the window. Moore testified that she had not noticed flashing blue lights from the car following them.

The defendant testified that he was driving with his head out of the window because his windshield wipers were broken and he could not see through the windshield because of the rain. He denied knowing that a Memphis police car was behind him as he was driving home. He saw only a black Camaro automobile behind him and apparently later saw this car in his driveway. He said the driver was an "undercover cop," who told him he was under arrest.

## ANALYSIS

### Issue I. Sufficiency of the Evidence

The defendant challenges the sufficiency of the convicting evidence, asserting specifically that the State failed to prove that he was fleeing.

The standard of review followed by this court when a defendant challenges the sufficiency of the convicting evidence is well established. The relevant question is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the offense charged beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789, 61 L. Ed. 2d 560 (1979); see also State v. Evans, 838 S.W.2d 185, 190-92 (Tenn. 1992); State v. Anderson, 835 S.W.2d 600, 604 (Tenn. Crim. App. 1992); Tenn. R. App. P. 13(e) ("Findings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt."). This rule applies to findings of guilt based on direct as well as circumstantial

---

[1]No field sobriety tests were offered to the defendant, and he refused a blood alcohol test.

-6-

evidence. See State v. Brown, 551 S.W.2d 329, 331 (Tenn. 1977). All questions involving the credibility of witnesses, the weight and value to be given the evidence, and all factual issues are resolved by the trier of fact. See State v. Pappas, 754 S.W.2d 620, 623 (Tenn. Crim. App. 1987). "A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." State v. Grace, 493 S.W.2d 474, 476 (Tenn. 1973). A jury conviction removes the presumption of innocence with which a defendant is initially cloaked and replaces it with one of guilt, so that on appeal, a convicted defendant has the burden of demonstrating that the evidence is insufficient. See State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982).

Tennessee Code Annotated Section 39-16-603 sets out, in relevant part, the offense of evading arrest, for which the defendant was convicted:

> **Evading Arrest.** — (a)(1) Except as provided in subsection (b), it is unlawful for any person to intentionally flee by any means of locomotion from anyone the person knows to be a law enforcement officer if the person:
>
> > (A) Knows the officer is attempting to arrest the person; or
> >
> > (B) Has been arrested.
>
> (2) It is a defense to prosecution under this subsection that the attempted arrest was unlawful.
>
> (3) A violation of subsection (a) is a Class A misdemeanor.
>
> (b)(1) It is unlawful for any person, while operating a motor vehicle on any street, road, alley or highway in this state, to intentionally flee or attempt to elude any law enforcement officer, after having received any signal from such officer to bring the vehicle to a stop.
>
> (2) It is a defense to prosecution under this subsection that the attempted arrest was unlawful.
>
> (3) A violation of subsection (b) is a Class E felony unless the flight or attempt to elude creates a risk of death or injury to innocent bystanders or other third parties, in which case a violation of subsection (b) is a Class D felony.

Tenn. Code Ann. § 39-16-603(a)-(b)(3) (1997). Here, the defendant was charged with felony evading arrest pursuant to subsection (b). Thus, to sustain the conviction, the evidence adduced at trial must have shown, beyond a reasonable doubt, that the defendant: (1) was operating a motor

vehicle (2) on a street in this state[2] and (3) that he received a signal from any law enforcement officer to bring his vehicle to a stop and (4) that he intentionally fled or attempted to elude the officer.

The defendant admitted that he was operating a motor vehicle on a street in Memphis, Tennessee. Further, although the evidence was disputed as to the exact point at which the defendant saw the blue lights flashing on Officer Carson's squad car,[3] the defendant admitted that he stopped at the four-way stop at Weaver and Shelby Drive and testified on direct examination that he proceeded on after the stop:

> A. And wasn't no cars coming. When I crossed over to - - I'm still on Shelby Drive. I cross Weaver going home. That's when the car - - it was a car behind me with a blue siren. I couldn't see nothing because my wipers, really the motor went out. When the motor went out - -
>
> Q. On your windshield wipers?
>
> A. Right. The motor went completely out. I stuck my head out the window to get me a guide way to make it from here into M & M Bail Bondsman. That's how far this was.
>
> Q. You are saying - - don't use other - - you are talking about the bail bonds place across the street?
>
> A. Right.
>
> Q. So, you are trying to describe how far you drove. From here to the bail bonds was how far you drove?
>
> A. Down to my house.
>
> Q. From the blue lights to your house.
>
> A. Right.

---

[2]This court has previously determined that "any street, road, alley or highway in this state" is intended to apply to public roads only. See State v. Jason Eric Bradburn, No. 01C01-9712-CC-00568, 1999 WL 632301, at *7 n.2 (Tenn. Crim. App. Aug. 19, 1999).

[3]Officer Carson testified that she first noticed the defendant's car traveling south on Weaver Road and that she activated her blue lights as she followed the defendant to a stop sign at the intersection of Weaver and Shelby Drive. The defendant, on the other hand, testified that he was traveling west on Shelby Drive and stopped at a four-way stop with Weaver before proceeding west to his home. Both place their vehicles at this intersection.

. . . .

> Q. So, how far were you from your house when you first perceived, your [sic] first saw, or had a belief, or knew in any way, that there was a police officer that was trying to get you to pull over?
>
> A. Okay. TCAB Horse Ranch is right there on Shelby Drive, where you go riding horses at. From there to my house -- on feets I can be at my house in less than three minutes.

Therefore, according to the defendant, he saw a car behind him with a "blue siren," while he was still traveling on Shelby Drive and before he turned off onto North Street and then onto Lakeridge Drive to reach his home. Although the two passengers in the defendant's car testified that they never saw or heard anything alerting them to the presence of a police officer until the defendant actually pulled into his drive, the jury was free to disbelieve their testimony and infer from the testimony of Officer Carson and from the defendant's own words that he was aware that a police car was signaling him to stop. There was no traffic, other than the defendant's car and the police car, on a public, two-lane road at 4:30 in the morning, with the police officer signaling the defendant by means of emergency blue lights, intermittent siren, verbal instructions over a PA system, and a high-powered spotlight shining directly on the defendant, who turned and looked at the police car and mouthed a response. The evidence is sufficient for a rational jury to conclude that the defendant received the signal from Officer Carson, a law enforcement officer, to bring his car to a stop.

The remaining issue is whether the evidence was sufficient to prove that the defendant did "intentionally flee or attempt to elude any law enforcement officer." Tenn. Code Ann. § 39-16-603(b)(1). The defendant argues that he was driving at a slow rate, approximately twelve to fifteen miles per hour, and that his actions were not calculated to "flee" in the sense of the evading arrest statute but were, at most, simply noncompliant or neglectful.

Questions of statutory interpretation are analyzed by the court according to specific guiding principles. First, a court's interpretation of a statute must give effect to the legislature's intent when enacting the statute, without "unduly restricting or expanding a statute's coverage beyond its intended scope." Owens v. State, 908 S.W.2d 923, 926 (Tenn. 1995) (citing State v. Sliger, 846 S.W.2d 262, 263 (Tenn. 1993)). Courts must look initially to the language of the statute itself and are restricted to the "natural and ordinary meaning of the language used by the legislature in the statute, unless an ambiguity requires resort elsewhere to ascertain legislative intent." Browder v. Morris, 975 S.W.2d 308, 311 (Tenn. 1998) (citing Austin v. Memphis Pub. Co., 655 S.W.2d 146, 148 (Tenn. 1983)). This court is "required to construe statutes in a reasonable and logical fashion." State v. Ralph, 6 S.W.3d 251, 256 (Tenn. 1999) (citing McClellan v. Board of Regents of State University, 921 S.W.2d 684, 689 (Tenn. 1996)).

Although both "flee" and "flight" are used in this section, neither is defined in the language of the statute. Yet both words have clear meanings. In subsection (a), misdemeanor evading arrest

involves intentionally fleeing when a person knows that the law enforcement officer is attempting to arrest the person or the person has been arrested.

Misdemeanor evading arrest is elevated to felony evading arrest when the fleeing person is driving a car on a public road and continues to operate the car after having been signaled by a law enforcement officer to stop. Fleeing, in this context, likewise "necessarily involves the concept of fleeing *from the presence* of an officer." State v. Lewis, 978 S.W.2d 558, 563 (Tenn. Crim. App. 1997). One flees who simply "hurr[ies] toward a source of security or protection." See Webster's Third New International Dictionary 868 (3d ed. 1993). Felony evading arrest, therefore, seeks to punish the individual who has some reason to anticipate arrest and is, therefore, unwilling to stop when signaled to do so by a law enforcement officer but chooses rather to "flee or attempt to elude" the officer.

Here, there was evidence that the defendant was intoxicated, or at least had been drinking, and he had previously been declared to be an habitual motor vehicle offender. Thus, in operating a motor vehicle, he was committing a felony, regardless of his speed. Direct and circumstantial evidence sufficiently shows that the defendant knew he had been signaled to stop. He continued driving down Shelby Drive, turning onto North Street, and then, ignoring a stop sign, turning onto Lakeridge Drive and eventually into his driveway. What is determinative of the issue of whether he was fleeing the police is not his speed but, instead, the fact that he intentionally continued driving, after having received a signal to stop, apparently because of his mistaken belief that he could avoid arrest if he could reach private property. Thus, we conclude that the evidence was sufficient to convict the defendant of felony evading arrest.

### Issue II.  Instructions to the Jury

The defendant asserts that the trial court erred in its instructions to the jury as to evading arrest and by not instructing as to a lesser-included offense.

### A.  Instructions as to the Elements of Evading Arrest

The defendant contends that the trial court's instructions to the jury concerning the elements of the charged offense were erroneous in two respects. First, he argues that the trial court failed to properly emphasize the fact that the intentional fleeing must follow a *knowing* receipt of a police signal to stop. The defendant cites State v. Jason Eric Bradburn, No. 01C01-9712-CC-00568, 1999 WL 632301 (Tenn. Crim. App. Aug. 19, 1999), in support of his argument. In Bradburn, we stated that "whether Appellant had committed Class E felony evading arrest depends on whether he knew that he had received a signal from the police to stop his vehicle . . . ." Id. at *5. This is a question of fact for the jury's determination. Here, the trial court gave the following instructions to the jury on this point:

-10-

For you to find the defendant guilty of this offense, the state must have proven beyond a reasonable doubt the existence of the following essential elements:

    1. that the defendant was operating a motor vehicle on a street in this state;

           and

    2. that the defendant after knowingly receiving a signal from a law enforcement officer to bring the vehicle to a stop, intentionally fled from the law enforcement officer.

To "receive" a signal in this context means to "take [it] in through the mind or senses." See Webster's Third New International Dictionary 1894 (3d ed. 1993). We conclude that the instructions, which included a definition of "knowingly," correctly charged the jury as to the meaning of "received," that is, that it requires knowledge of the signal on the part of the offender.

Second, the defendant asserts that the trial court erred in failing to define "flee." The defendant submitted a request for the following definition, based on Tennessee Pattern Jury Instruction 42.18, to be included in the jury charge:

The law makes no precise distinction as to the manner of fleeing. However an intentional fleeing requires both the leaving of the scene of difficulty and the intent to hide out or conceal himself in the community. [An entirely innocent person may intentionally flee and such flight may be explained by the proof offered or by the facts of the case[.]]

The trial court refused this proffered instruction, stating, "I'm not going to give a special definition of flee unless for some reason the jury comes back and says, what do you mean by flee. It should just be taken in its common, ordinary usage." We agree with the trial court. The definition in TPJI is intended for the limited circumstance of inference of guilt based upon flight. Here, the fleeing is itself the criminal conduct. Fleeing in the context of Tennessee Code Annotated Section 39-16-603 is simply to run away from or to try to avoid.

We conclude that the trial court instructed the jury using a proper statement of the law as it relates to felony evading arrest. This issue is without merit.

### B. Lesser-Included Offenses

The defendant contends that the trial court also erred in not instructing the jury as to the lesser-included offenses of criminal attempt and obedience to police officers.

-11-

## 1. Attempted Evading Arrest

The defendant argues that criminal attempt as set out in Tennessee Code Annotated Section 39-12-101(a) is a lesser-included offense of felony evading arrest, and the jury should have been instructed as to this offense. The State contends that one cannot attempt to evade arrest without completing the crime. We agree with the State. Based on the plain language of Tennessee Code Annotated Section 39-16-603, an individual may be guilty of evading arrest who either "flee[s] or attempt[s] to elude." Thus, if the criminal attempt statute is tacked onto the felony evading arrest statute, it would create the anomalous offense of an attempt to attempt to elude. Since this statute already proscribes both flight and an attempt to elude, criminal attempt itself is not a lesser-included offense of evading arrest. The trial court did not err in not instructing the jury as to criminal attempt.

## 2. Obedience to Police Officers

The next issue is whether obedience to police officers is a lesser-included offense of evading arrest. In State v. Burns, 6 S.W.3d 453 (Tenn. 1999), our supreme court set out the appropriate test for determining if one offense is a lesser-included offense of another:

> An offense is a lesser-included offense if:
>
> (a)  all of its statutory elements are included within the statutory elements of the offense charged; or
>
> (b)  it fails to meet the definition in part (a) only in the respect that it contains a statutory element or elements establishing
>
>   (1)  a different mental state indicating a lesser kind of culpability; and/or
>
>   (2)  a less serious harm or risk of harm to the same person, property or public interest; or
>
> (c)  it consists of
>
>   (1)  facilitation of the offense charged or of an offense that otherwise meets the definition of lesser-included offense in part (a) or (b); or
>
>   (2)  an attempt to commit the offense charged or an offense that otherwise meets the definition of lesser-included offense in part (a) or (b); or

<blockquote>
(3) solicitation to commit the offense charged or an offense that otherwise meets the definition of lesser-included offense in part (a) or (b).
</blockquote>

Id. at 466-67. Tennessee Code Annotated Section 55-8-104 states the following:

<blockquote>
**Obedience to police officers.** — (a) No person shall willfully fail or refuse to comply with any lawful order or direction of any police officer invested by law with authority to direct, control or regulate traffic.

(b) A violation of this section is a Class C misdemeanor.
</blockquote>

The State contends that obedience to police officers fails to meet any of the requirements of the Burns test and is therefore not a lesser-included offense of evading arrest.

Part (a) of the Burns test uses a statutory elements approach consistent with that outlined in Howard v. State, 578 S.W.2d 83, 85 (Tenn. 1979). See Burns, 6 S.W.3d at 467. Under this statutory elements approach, an offense is not a lesser-included offense of the charged offense "unless the elements of the lesser offense are a subset of the elements of the charged offense." Id. at 464. That is to say, the lesser offense "may not require proof of any element not included in the greater offense as charged in the indictment." Id.

Here, a violation of the lesser offense is proven when the State establishes the following elements: that the defendant did (1) willfully fail or refuse to comply with (2) any lawful order or direction of (3) any police officer invested by law with authority to direct, control or regulate traffic. A comparison of the elements of these two offenses makes it clear that, applying the Burns test, disobeying a police officer cannot be a lesser-included offense of felony evading arrest. While the felony evading arrest statute is violated when a signal to "stop" is not heeded, a police officer is disobeyed, violating the misdemeanor statute, when "any lawful order or direction" is not heeded. Thus, the misdemeanor, which the defendant asserts is a lesser-included offense, criminalizes disobeying "any" order of an officer, while the felony violation does not occur unless the order is to "stop." Disobeying commands to turn, to take a detour, or to slow down would violate the misdemeanor statute, but not the felony. Burns requires that the elements of the lesser offense be included, or subsumed, within the greater. But, these two statutes present exactly the opposite situation because the element of the felony, requiring that the order be to "stop," is included within the corresponding and much broader element of the misdemeanor, which requires only that there be an "order or direction."

Accordingly, the misdemeanor charge of obeying a police officer cannot be a lesser-included offense of felony evading arrest under subsection (a) of the Burns test, nor under sections (b) or (c). Thus, the trial court was correct in not instructing the jury as to the misdemeanor statute, obeying a police officer.

## Issue III.  Consecutive Sentencing

At the conclusion of the sentencing hearing, the trial court ordered the defendant to serve his six-year sentence for felony evading arrest consecutively to his six-year sentence for driving while an habitual motor vehicle offender, an offense to which he had previously pled guilty.  Both are Class E felonies.  The defendant was sentenced as a career offender.  The only sentencing issue before this court is whether the trial court erred in ordering the two sentences to be served consecutively for an effective sentence of twelve years.

When an accused challenges the length and manner of service of a sentence, it is the duty of this court to conduct a *de novo* review on the record with a presumption that "the determinations made by the court from which the appeal is taken are correct."  Tenn. Code Ann. § 40-35-401(d).  This presumption is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances."  State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991).

In conducting a *de novo* review of a sentence, this court must consider (a) any evidence received at the trial and/or sentencing hearing, (b) the presentence report, (c) the principles of sentencing, (d) the arguments of counsel relative to sentencing alternatives, (e) the nature and characteristics of the offense, (f) any mitigating or enhancing factors, (g) any statements made by the accused in his own behalf, and (h) the accused's potential or lack of potential for rehabilitation or treatment.  Tenn. Code Ann. §§ 40-35-103 and -210;  State v. Scott, 735 S.W.2d 825, 829 (Tenn. Crim. App. 1987).  The party challenging the sentences imposed by the trial court has the burden of establishing that the sentences are erroneous.  Sentencing Commission Cmts. to Tenn. Code Ann. § 40-35-401;  Ashby, 823 S.W.2d at 169.

As a general rule, consecutive sentences are imposed at the discretion of the trial court upon its consideration of one or more of the following statutory criteria:

(1) The defendant is a professional criminal who has knowingly devoted such defendant's life to criminal acts as a major source of livelihood;

(2) The defendant is an offender whose record of criminal activity is extensive;

(3) The defendant is a dangerous mentally abnormal person as declared by a competent psychiatrist who concludes as a result of an investigation prior to sentencing that the defendant's criminal conduct has been characterized by a pattern of repetitive or compulsive behavior with heedless indifference to consequences;

-14-

(4)  The defendant is a dangerous offender whose behavior indicates little or no regard for human life, and no hesitation about committing a crime in which the risk to human life is high;

(5)  The defendant is convicted of two (2) or more statutory offenses involving sexual abuse of a minor with consideration of the aggravating circumstances arising from the relationship between the defendant and victim or victims, the time span of defendant's undetected sexual activity, the nature and scope of the sexual acts and the extent of the residual, physical and mental damage to the victim or victims;

(6)  The defendant is sentenced for an offense committed while on probation; or

(7)  The defendant is sentenced for criminal contempt.

Tenn. Code Ann. § 40-35-115(b).  These criteria are stated in the alternative; therefore, only one need exist to support the appropriateness of consecutive sentencing.

The presentence report showed that the defendant is a thirty-six-year-old male working in the roofing business.  In imposing consecutive sentencing, the trial court focused on the defendant's extensive criminal record, which he described as "horrible," stating:

Looking at his record on consecutive and concurrent purposes, under statutory considerations 40-35-115, the Court finds that Mr. Johnson is a defendant who has - - whose record of criminal activity is extensive, particularly in driving offenses.

And although I know that under State v. Taylor, consecutive sentences shouldn't routinely be imposed in criminal cases, and the aggregate maximum of consecutive terms must be reasonably related to the severity of the offenses involved, this Court feels that these two sentences should be run consecutively because Mr. Johnson has a pattern over the years of doing whatever he wants, as far as traffic cases.

The defendant's record reviewed by the court included offenses dating from the time the defendant was eighteen years old.  These offenses, listed here with the date of conviction, included convictions for:  malicious mischief (1/8/82); disorderly conduct (5/25/82); assault and battery (10/12/83); third degree burglary (5/17/85); disturbing the peace (6/4/86); disturbing the peace (6/24/86); assault and battery (6/1/87); aggravated assault (9/22/87); assault and battery (3/2/89); simple assault (7/22/91); driving without a driver's license (4/26/91); driving without a driver's license (4/26/91); driving

under the influence (6/30/93); weapons offense (6/30/93); driving with a revoked license (6/30/93); theft of property (6/30/93); driving while under the influence (6/30/93); reckless driving (1/17/96); driving while under the influence (1/17/96); driving while license suspended (1/17/96); driving while license suspended (1/17/96); resisting arrest (4/15/96); and disorderly conduct (6/3/98). The instant offense occurred on October 3, 1998. The trial court stated, "And to my mind, Mr. Johnson just will not stop committing crimes." There can be no serious argument with the defendant's meeting criteria (2), that he is "an offender whose record of criminal activity is extensive." Tenn. Code Ann. § 40-35-115(b)(2). The defendant also violated parole in 1986 and 1987.

Because of his status as a career offender, the length of his sentences for the Class E felonies was mandated by law. We conclude that the trial court did not err in ordering that he serve his sentences consecutively.

## CONCLUSION

We conclude that the evidence was sufficient to support the conviction for felony evading arrest. We further conclude that the trial court properly instructed the jury and appropriately sentenced the defendant. The judgments of the trial court are affirmed.

_____
ALAN E. GLENN, JUDGE